UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| **ALPHONSO ALLEN** | **CIVIL ACTION NO. 5:15-cv-0524** |
| **VS.** | **SECTION P** |
| | **JUDGE S. MAURICE HICKS** |
| **RONNY RICHARDSON, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Alphonso Allen, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on March 6, 2015. When he filed the complaint, plaintiff was a pre-trial detainee incarcerated at the Sabine Parish Detention Center (SBDC) awaiting trial on some unspecified charges in some unspecified jurisdiction. (He was subsequently convicted [see Doc. 12, pp. 3-4] and is either awaiting imposition of sentence or serving the sentence previously imposed.)

He complained that he has been denied his right of access to the courts, that he has been denied appropriate diet and health care, and that his legal mail has been tampered with. Plaintiff originally sued Sabine Parish Sheriff Ronny Richardson and Warden Joe Dewil, Jr.; in a subsequent complaint, he provided a detailed narrative which identified numerous additional individuals all of whom were added as defendants by the Clerk of Court.[1] Plaintiff prays for compensatory damages.

This matter has been referred to the undersigned for review, report, and recommendation

---

[1] Plaintiff mentioned, but did not explicitly identify these individuals as defendants – Warden Sweet, Josh Sandel, Frank Maxie, Lanon White, Rickey Harrell, Corrections Officer Jerry, Ms. Kaylynn Remedies, Ricky Montgomery, and Ranking Alford.

in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

### *Statement of the Case*

In his original complaints [Docs. 1 and 6], plaintiff claimed that SBDC lacks legal assistance for pre-trial inmates. He also claimed that the accounts officer or others lost the affidavit he needed to proceed herein *in forma pauperis*. He complained that SBDC has no dietician on staff to prepare meals appropriate for his medical condition. He claimed that on January 21, 2015, an inmate erroneously prepared his plate and he became ill as a result of eating the food served to him. He complained that he was unable to see a health care professional on that occasion because the facility has no licensed nurse on staff. He complained that deputies distribute and prescribe medication without the supervision of a health care professional.

He claimed that on February 28, 2015, he was served uncooked grits. He claimed that on March 4, 2015, Corrections Officer Maxie allowed an inmate to distribute the mail and plaintiff discovered that correspondence from the Louisiana Third Circuit Court of Appeal had been opened prior to delivery. He also claimed that mail from this Court is not properly "logged in."

On May 12, 2015, plaintiff was directed to amend his complaint to provide: (1) the name of each person who allegedly violated plaintiff's constitutional rights; (2) a description of what actually occurred or what each defendant did to violate plaintiff's rights; (3) the place and date that each event occurred; and (4) a description of the alleged injury sustained as a result of the alleged violation. [Doc. 10]

On May 21, 2015, he filed his amended complaint. Therein he alleged that on December

31, 2014, he was transferred to SPDC from Natchitoches Parish Detention Center (NPDC). He claimed that his "medical health record" was forwarded by NPDC; that Warden Dewil and Warden Sweet were advised of his "medical chart" upon arrival; and that they failed to post a memorandum in the kitchen. As a result, on January 21, 2015, Shift Commander Josh Sandel allowed an inmate to prepare a meal for plaintiff. According to plaintiff, the meal contained food that was not authorized on plaintiff's medical chart and the meal was not authorized by Warden Dewil, Warden Sweet or a licensed dietician.[2] Plaintiff had an "instant reaction of sickness" including vomiting and stomach pain.[3]

Corrections Officer Maxie was summoned and plaintiff asked to be taken to the hospital; Maxie advised that he could not approve his request and further refused to forward the request to the warden. Thereafter plaintiff forwarded numerous sick-call requests to Warden Dewil, all of which were ignored.[4]

On February 28, 2015, an inmate prepared and served plaintiff uncooked grits. Officer

---

[2] According to the exhibits supplied by plaintiff, his diet specified only "No lunchmeat" at breakfast, lunch, and dinner. [Doc. 12-1, p. 1] Plaintiff submitted a grievance concerning this issue on January 21, 2015 in which he claimed "It's in my medical record that I can't eat any type of lunch meat product. Inmate Adam took it upon his [sic] self and went [sic] fix me a ham sandwich instead of confirming with my medical chart and not giving me these products." [*Id.*, p. 2]

[3] In his grievance he indicated that he consumed the sandwich prepared by Inmate Adam and thereafter had stomach pains, heart burn and dizziness and was unable to see the prison nurse because she was not available. [*Id.*, p. 2]

[4] Plaintiff submitted a grievance on January 27, 2015 claiming that he had submitted "sick calls after sick calls since the incident of being fed lunch meat product" yet he still had not seen a physician for the pain in his stomach "after being fed the wrong food by an inmate." [*Id.*, p. 5] Plaintiff submitted sick call requests on January 21, 23, and 27, 2015 complaining of stomach pain, heart burn, and dizziness after having eaten a ham sandwich. [*Id.*, pp. 14-16]

Maxie was advised but refused to remedy the situation. Thereafter plaintiff submitted numerous grievances concerning the incident, all of which were ignored.[5]

On February 15, 2015, plaintiff claimed that Corrections Officer Maxie distributed medication to inmates and he complained because Maxie was untrained and unsupervised. [Doc.12-1, p. 6]

On March 4, 24 and 31, and May 13 and 15 plaintiff received "legal mail issues" from Warden Harrell, Officer Maxie, and Officer Jerry. According to plaintiff the mail "was already open [sic] outside of me being present and it was given to me unlisted of being sign for in a ... legal-mail logg [sic] book verifying the acceptance of this legal mail, time or date of issuing." Further Maxie and Jerry gave plaintiff's "legal mail" to an inmate to deliver to plaintiff and the mail "had been read and tampered with by those inmates." According to plaintiff he has mailed "legal notices and mail to family members and friends out of State and they never receive the notices or mail." On April 20, plaintiff advised Warden Sweet of these incidents. Plaintiff's grievances on this issue were also ignored.[6]

Plaintiff also complained that Officer Maxie conveyed plaintiff's affidavit to proceed *in forma pauperis* to prison Accounts Officer, Ms. Kaylynn who, on January 21, 2015, refused to

---

[5] In the grievance dated February 28, 2015, plaintiff claimed he was served uncooked grits on his tray. His complaint was ignored and he discarded the grits and complained about missing that portion of his lunch on that particular day. [*Id.*, p. 3] Deputy Warden Harrell responded to the grievance indicating that "... the Deputies on duty as well as other inmates ... all ate the grits in question with no complaints." He did, however offer to speak to the cook to assure proper preparation in the future. [*Id.*, p. 4]

[6] On March 4, 2015, plaintiff complained that Maxie had allowed an inmate to distribute "legal mail" from the Third Circuit Court of Appeal. He claimed the mail was tampered with by the inmate and was not properly logged in. He also claimed that mail sent by him to a friend a month prior to March 4 was not received. [*Id.*, pp. 7-8]

execute the statement of accounts to allow plaintiff to proceed *in forma pauperis* in this litigation. Thereafter Maxie failed to return the document to plaintiff and he was forced to request the affidavit from NPDC. He claimed this deprived him "of time and legal access..." and that Warden Dewil ignored his grievances on this issue.[7]

On March 23, 2015, plaintiff asked Warden Dewil for forms to file a writ of *habeas corpus*, a motion to suppress evidence, and a motion to change venue in his pending criminal proceeding. Dewil claimed that he could not find the requested forms. According to plaintiff he was forced to go to trial where he was found guilty, and, he now faces an habitual offender adjudication because he did not have access to the requested forms.[8]

*Law and Analysis*

*1. Screening*

Plaintiff was a detainee when he experienced the conditions and circumstances complained of. Nevertheless, a detainee is considered a prisoner pursuant to 28 U.S.C. §1915(h). When a prisoner or detainee is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails

---

[7] Plaintiff submitted a grievance on January 27, 2015, in which he claimed that after refusing to properly execute his *in forma pauperis* application Ms. Kaylynn claimed that she lost the document. [*Id*., pp. 9 and 11] He also submitted a grievance complaining that he asked numerous times for legal assistance to "insight some legal matters so I can file what I need to file to the courts..." [*Id*., p. 10]

[8] In his January 28, 2015, response to plaintiff's grievances concerning access to courts, Dy. Warden Harrell wrote, "I suggest that if you have legal matters needing attention, that you contact your Attorney at the Public Defender's Office that Judge Beasley appointed you to handle these matters." [*Id*., p. 13]

5

to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A; 28 U.S.C. §1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal,* 596 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably

meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

As shown above, plaintiff has filed a several complaints along with supporting exhibits including prisoner grievances and responses. Further amendment would serve no useful purpose.

**2. Diet**

Plaintiff first complained that notwithstanding medical orders to avoid eating lunch meat, he was served a lunch meat sandwich on January 21, 2015. He then complained about being served uncooked grits on February 28, 2015.

It has long been held that "... [t]he State's exercise of its power to hold detainees and prisoners ... brings with it a responsibility under the U.S. Constitution to tend to the essentials of their well-being: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs ... it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 638-39 (5th Cir.1996) (*en banc*) (quoting *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)).

Thus, a detainee's constitutional rights arise from "both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Hare,* at 639 (citing *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). The Due Process Clause of the Fourteenth prohibits the punitive confinement of a pretrial detainee since, by definition, the guilt of a detainee has not yet been adjudicated. *See Bell*, 441 U.S. at 535. Since plaintiff was a pretrial

detainee at all times relevant to this civil action, the issue herein is whether or not the complained of acts or omissions of the defendants amounted to a violation of plaintiff's due process rights under the Fourteenth Amendment.

In order to determine the standard of analysis for constitutional challenges brought by pretrial detainees under § 1983, courts are directed to first to classify the challenge as either an attack on a "condition of confinement" or as an "episodic act or omission." *Flores v. County of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir.1997) (citing *Hare*, 74 F.3d at 644). In a detainee suit challenging conditions of confinement, the constitutional challenge is to the "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare*, 74 F.3d at 644. On the other hand, an "episodic act or omission" case, complains of a particular act or omission of one or more officials, and it focuses on "whether [the] official breached his constitutional duty to tend to the basic human needs of persons in his charge." *Id.* at 645. A detainee who complains that an "episodic act or omission" resulted in an unconstitutional violation of a his Fourteenth Amendment rights is required to show that the officials acted with "deliberate indifference" to his health and safety. *Hare*, 74 F.3d at 647-48.

Plaintiff complained about being fed a lunch meat sandwich on one occasion, and then uncooked grits on another. Plaintiff must surely have been aware that he was not supposed to eat the sandwich, yet, for reasons he does not explain, he apparently did so. It is unreasonable for him to blame this circumstance on any of the defendants. Likewise, with regard to the grits, he apparently had the presence of mind to avoid eating that product, therefore, he can claim no harm as a result of the incident. Surely, the deprivation of one course of one meal does not amount to a violation of Constitutional proportions.

8

Jail officials must provide "humane conditions of confinement, ensuring that inmates receive adequate food [and] ... medical care..." *Palmer v. Johnson*, 193 F.3d 346, 351-52 (5th Cir.1999). "[T]he Fourteenth Amendment prohibits the imposition of conditions of confinement on pretrial detainees that constitute punishment." *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir.2004) (internal quotation marks and citation omitted). However, "the Constitution is not concerned with a *de minimis* level of imposition on pretrial detainees." *Id.* (internal quotation marks and citation omitted). Plaintiff's claims concerning the sandwich and grits identify only *de minimis* levels of imposition and must be dismissed as frivolous.

### *3. Medical Care*

Plaintiff also complained about the denial of appropriate or adequate medical treatment for the illness he claimed was occasioned by his consumption of the sandwich. As noted above, plaintiff's constitutional rights flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.1996). Detainees, by virtue of their status, are not subject to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861 (1979). Nonetheless, when, as here, a pretrial detainee brings medical care claims which are directed toward particular incidents, these events are properly analyzed as episodic acts, and the deliberate indifference standard is applied. *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir.1996). This standard is substantially equivalent to the Eighth Amendment protections available to a convicted prisoner. *Id.* To state a cause of action, this plaintiff needs to show deliberate indifference on the part of each of the defendants. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. Mere negligence or a failure

to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Id.*

Thus, in order to establish an actionable constitutional violation plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the plaintiff to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted). Plaintiff's pleadings fall far short of alleging facts sufficient to establish deliberate indifference on the part of any of the named defendants or any of the other corrections officers or healthcare officials identified in his pleadings.

To the extent that the pleadings allege negligence or even malpractice on the part of the defendants with regard to his medical care claim, plaintiff fails to state a claim for which relief may be granted since deliberate indifference is not equivalent to negligence. Put simply, deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under the deliberate indifference standard, it is not sufficient that defendants should have known of a substantial risk; they must have actual knowledge of the risk and must thereafter have ignored it. In other words, a civil rights plaintiff must allege and prove that each of the defendants knew of and then disregarded an excessive risk of injury to him, and that they were both aware of the facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they

drew that inference. *Id.* at 837.

Further, as noted above, plaintiff is a prisoner proceeding *in forma pauperis* herein. Courts are afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Plaintiff's claim of serious illness, that is to say, illness requiring hospitalization or medical attention, following his voluntary ingestion of a lunch meat sandwich is far fetched and clearly baseless. Plaintiff's medical care claim is likewise frivolous.

*4. Access to Courts*

Finally, plaintiff asserted that the defendants have interfered with his right of access to the Courts as follows: (1) by opening correspondence from the Third Circuit Court of Appeal to plaintiff and losing "legal mail" sent to out of state relatives; (2) by refusing to timely execute plaintiff's application to proceed *in forma pauperis* in this proceeding; and, (3) by failing to provide the necessary forms to enable plaintiff to apply for pro se pre-trial *habeas corpus* relief, suppression of the evidence, or a change of venue with respect to the charges pending against him.

"It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999); *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116

S.Ct. 2174, 135 L.Ed.2d 606 (1996)).  Put another way, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d at 821;  *Lewis v. Casey*, 518 U.S. at 351, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996).  Plaintiff has not shown how his ability to prepare and transmit legal documents has in any way been inhibited as a result of the action or inaction of any of the named defendants.

      Furthermore, in order to state a claim based on the denial of a prisoner's access to the courts, a plaintiff must show actual injury. *See Lewis v. Casey*, 518 U.S. 343, 351-54, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).  He must "demonstrate[ ] that his position as a litigant was prejudiced by his denial of access to the court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996) (*per curiam*) (citing *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993)). This requirement that a claimant show "actual injury"  is "not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354.

      Plaintiff has not shown that he was prejudiced in his ability to litigate this law suit or any other with respect to the alleged fault of the defendants.  First, he can identify no prejudice resulting from the fact that correspondence from the Third Circuit Court of Appeal was opened and possibly inspected by a defendant herein; likewise, he identifies no prejudice resulting from the failure of his relatives to receive his submissions; nor does he identify any prejudice resulting from the delay in submitting his *in forma pauperis* application. Indeed, that document was submitted in proper form on March 20, 2015 [Doc. 7] and plaintiff was ultimately afforded *in*

*forma pauperis* status.

Finally, with regard to his claim that he has been denied the opportunity to file *pro se* pleadings with respect to pending criminal charges, he likewise fails to state a claim for which relief may be granted.  In *Tarter v. Hury*, 646 F.2d 1010, 1014 (5th Cir.1981) the Fifth Circuit held that in the absence of extraordinary circumstances, a criminal defendant represented by counsel does not have a constitutional right to file every *pro se* motion he wants to file in addition to his attorney's motions. In *Degrate v. Godwin*, 84 F.3d 768, 769 (5th Cir.1996) the Fifth Circuit held that even an inmate who rejected the assistance of his court-appointed attorney "had no constitutional right to access a law library in preparing the *pro se* defense of his criminal trial." (Emphasis supplied)

From the evidence submitted [Doc. 12-1, p. 13], it appears that plaintiff was appointed counsel from the Public Defender's Office; and, providing or even offering to provide, legal counsel is a constitutionally acceptable alternative to satisfy a prisoner's right of access to the Courts. *See Lewis v. Casey*, 518 U.S. 343, 350-51, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (relying on *Bounds v. Smith*, 430 U.S. at 830, 97 S.Ct. 1491.)  Finally, even if he was denied access as claimed, he has not shown prejudice resulting from therefrom.  He alleged only in conclusory fashion that his inability to file the *pro se* pre-trial pleadings resulted in his conviction.   Plaintiff's access to courts claim is frivolous and fails to state a claim for which relief may be granted.

### *Recommendation*

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted

13

in accordance with the provisions of 28 U.S.C. §§1915 and 1915A.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, June 4, 2015.

_____
**KAREN L. HAYES**
**UNITED STATES MAGISTRATE JUDGE**